UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SEBASTIAN C. GHILES,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO HEIGHTS, a municipal corporation, and JESSICA GARNER, in her individual and official capacity,<br><br>Defendants. | No. 12 CV 07634<br><br>Judge Manish S. Shah |

## ORDER

Defendants' partial motion to dismiss and to strike, [46], is granted in part, and denied in part as moot. The first-amendment retaliation and conspiracy counts (Counts I, VI–IX) are dismissed without prejudice. Ghiles's requests for punitive damages and attorney fees are stricken from his tortious interference claim (Count X). The motion to strike punitive damages and attorney fee requests from Ghiles's conspiracy counts is moot; the conspiracy counts are dismissed in the entirety.

## STATEMENT

Sebastian Ghiles, an African American man, was employed by the City of Chicago Heights as an inspector with the city's Code Enforcement Department. In April 2011, Ghiles ran for 1st Ward District Commissioner on the Integrity party ticket but lost to a Unity party candidate. Ghiles alleges that Jessica Garner and other non-defendant officials of Chicago Heights are members of the Unity party. In late October and early November 2011, Ghiles was temporarily suspended from his job (at first with pay, then without pay) for a few days; when he returned to work, his job duties were reduced, his work vehicle was taken away, and he was under surveillance. Ghiles alleges that these actions were retaliatory and discriminatory. He also alleges that the city and unknown people conspired to falsely arrest and maliciously prosecute him for felony theft and official misconduct and that a jury trial on these charges terminated in his favor in June 2015.

His amended complaint brings ten claims: first-amendment retaliation against the city and Garner (Count I); Title VII and Illinois Human Rights Act racial

discrimination and retaliation claims against the city (Counts II–V); conspiracy claims against the city and unknown co-conspirators for false arrest and malicious prosecution under Illinois law and 42 U.S.C. §§ 1983 and 1985 (Counts VI–IX); and a tortious interference with business expectancy claim against the city (Count X). The defendants move to dismiss Ghiles's first-amendment retaliation and conspiracy claims (Counts I, VI–IX) and move to strike Ghiles's requests for punitive damages against the city and for attorney fees in the state-law conspiracy and tortious interference claims (Counts VII, IX, and X), except for Ghiles's request for criminal defense attorney fees in the malicious prosecution claim. In responding to the motion, Ghiles agrees to dismiss the malicious prosecution claim brought under §§ 1983 and 1985 (Count VIII) and the requests for punitive damages against the city. [56] at 8.[1]

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint need not include specific facts, but it must provide the defendant with fair notice of what the claim is and the grounds upon which it rests. *Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1098–99 (7th Cir. 2015) (citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must present enough factual matter, accepted as true, that the claim to relief "is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In considering a motion to dismiss under Rule 12(b)(6), a district court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013).

To state a claim for first-amendment retaliation, a public employee must allege that: (1) his speech was constitutionally protected, (2) he suffered a deprivation likely to deter free speech, and (3) his speech was at least a motivating factor in the employer's action. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012). Ghiles alleges that Garner and other city officials (including the mayor, chief of staff, Director of Code Inspection, and corporation counsel) were all members of the Unity party and knew that Ghiles ran for election in April 2011 as a member of the Integrity party. Merely being of a different political persuasion than the city decision-makers, defendants argue, is insufficient to allege this causal link. *See Hall v. Babb*, 389 F.3d 758, 762 (7th Cir. 2004). Defendants also argue that Ghiles failed to allege a causal link between his unsuccessful run for 1st Ward District Commissioner against a Unity party candidate in April 2011 and his suspension and reduction in job duties in the fall of 2011, given that six months elapsed in between these events and that "a temporal connection of four months fail[s] to establish a

---

[1] Bracketed numbers refer to entries on the district court docket.

2

causal connection between a protected activity and an adverse action." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 665 (7th Cir. 2006).[2]

For a retaliation claim inferring causation based on timing, as here, the adverse employment action must follow "close on the heels of protected expression"—typically, only a few days later. *Kidwell*, 679 F.3d at 966. The six-month delay is too remote to link Ghiles's unsuccessful campaign on the Integrity party ticket and his alleged suspension by a Unity party city official. While Ghiles's first-amendment retaliation claim also alleges that the city had an unwritten policy to suspend city employees who owned property violating city code, which was selectively enforced, [45] ¶ 28, there is no clear allegation that he was suspended because of his political association. There are conclusory allegations that he was retaliated against in violation of the First Amendment, but these conclusory allegations are not facts that state a claim. It may be possible for Ghiles to state a claim if a named defendant suspended Ghiles because of his political association with the Integrity party, but that is not what he has pleaded in this amended complaint.[3] Defendants' motion to dismiss the first-amendment retaliation claim is granted. The dismissal is without prejudice.

Defendants also argue that Ghiles's conspiracy claims against the city (Counts VI–IX) are barred by the intracorporate conspiracy doctrine, because they fail to identify parties unaffiliated with the city who participated in these alleged conspiracies, and that the §§ 1983 and 1985 conspiracy claims against the city are barred because they do not allege any basis for *Monell* liability. In turn, Ghiles contends that *Monell* liability can be inferred from his allegations and that the intracorporate conspiracy doctrine is inapplicable because he was not a corporate agent of the city.

All of Ghiles's conspiracy claims against the city must be dismissed. To prevail on a conspiracy claim under § 1983, a plaintiff must show: (1) that two or more individuals reached an agreement to deprive the plaintiff of his constitutional rights; and (2) that there were overt acts in furtherance of this agreement that actually deprived the plaintiff of those rights. *Beaman v. Freesmeyer,* 776 F.3d 500, 510 (7th Cir. 2015). The elements for a conspiracy claim under Illinois state law are similar.

---

[2] Title VII retaliation claims, as in *Tomanovich*, follow the same causation analysis as first-amendment retaliation claims. *See, e.g., Hobgood v. Illinois Gaming Bd.*, 731 F.3d 635, 643–48 (7th Cir. 2013).

[3] The city can be liable under § 1983 only if a policy or final policymaker's decision was the moving force behind the first-amendment violation. *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). The complaint does not adequately allege the causal link between political association and city policy and therefore does not state a claim for municipal liability.

*In re Repository Techs., Inc.,* 601 F.3d 710, 726 (7th Cir. 2010) (under Illinois law, a civil conspiracy consists of: (1) an agreement to accomplish an unlawful purpose; and (2) an overt act in furtherance of the conspiracy that is either "tortious or unlawful in character"). To adequately plead conspiracy liability under Federal Rule of Civil Procedure 8, the plaintiff must allege that "a particular defendant joined the conspiracy and knew of its scope." *Bank of Am., N.A. v. Knight,* 725 F.3d 815, 818 (7th Cir. 2013).

Ghiles's conspiracy claims are not adequately pleaded. The claims provide no description of the scope or manner of the conspiracy. The conspirators are identified as "the City of Chicago Heights, as well as other as-yet unknown co-conspirators," but the complaint fails to describe anything about the alleged role played by the city or these unknown conspirators. The claims also fail to give any indication of the possible identity of the unknown conspirators (e.g., by action, position, or employment, if not their names). Ghiles contends that the conspiracy claims also identified members of the city's police department. [54] at 6. But his complaint does not identify any police officers (either by name or as unknown police officers).

Even if city officials had been identified in Ghiles's conspiracy claims, the claims would still be dismissed under the intracorporate conspiracy doctrine, which is applicable to Ghiles's conspiracy claims brought under both federal and Illinois law. "[U]nder the intracorporate conspiracy doctrine[,] a conspiracy cannot exist solely between members of the same entity," including government entities. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 632 (7th Cir. 1999) (dismissing § 1985 conspiracy claim against hospital security personnel and their supervisor);[4] *see Alpha Sch. Bus Co. v. Wagner*, 391 Ill.App.3d 722, 737–38 (1st Dist. 2009) ("[E]mployees and officers of a corporation are the corporation's agents" and "the general rule is that there can be no conspiracy between a principal and an agent because the acts of an agent are considered in law to be the acts of the principal."); *see also Scott v. City of Chicago*, 619 Fed. App'x 548 (7th Cir. 2015) (When all defendants in a § 1983 conspiracy claim "are public employees (plus their employer) . . . a conspiracy claim has no role to play."). The allegations in Ghiles's complaint provide no indication that any of the unknown co-conspirators were private individuals who had reached an understanding with the city to violate Ghiles's rights through his alleged false arrest and malicious prosecution. It is also irrelevant whether Ghiles was an agent of the city, as he is not alleging a conspiracy claim against himself, and

---

[4] In Ghiles's opposition brief, his counsel stated that she could not respond to *Payton* because defendants' citation was incorrect and she could not locate the case. Defendants' citation was correct, and therefore there is no apparent reason why counsel could not address this case.

Ghiles has not identified any pertinent exceptions to the intracorporate conspiracy doctrine.[5]

The conspiracy claims under §§ 1983 and 1985 (Counts VI and VIII) must also be dismissed because, under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978), a municipality can only be liable for a § 1983 violation through an express policy causing a constitutional deprivation, a wide-spread practice constituting a custom or usage with the force of law, or an allegation that the constitutional injury was caused by a person with final policymaking authority. *Calhoun*, 408 F.3d at 379. Ghiles's conspiracy counts do not allege an express policy, wide-spread practice, or action by a final policymaker that was the moving force behind Ghiles's false arrest and malicious prosecution; in fact, the complaint provides practically no details about the alleged false arrest or malicious prosecution. *Monell* liability cannot plausibly be inferred. The conspiracy claims (Counts VI–IX) are dismissed. The dismissal is without prejudice because it may be possible for Ghiles to allege a conspiracy with non-state actors.

Defendants also move to strike Ghiles's requests for punitive damages against the city and for attorney fees in his state-law claims. Ghiles concedes that, under the case law, he is unable to recover punitive damages against the city and agrees to strike those requests for relief ([54] at 8); Ghiles does not respond to defendants' arguments regarding attorney fees. Under Illinois law, prevailing parties are not entitled to attorney fees in absence of express statutory or contractual provisions authorizing such recovery. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 64. Defendants' motion is denied as moot for the conspiracy claims, which are dismissed in their entirety, but granted as to the requests for punitive damages and attorney fees in Ghiles's state-law tortious interference claim (Count X), which are stricken.

ENTER:

Date: 2/12/16

Manish S. Shah
U.S. District Judge

---

[5] Ghiles cites to *Grider v. City of Auburn, Alabama* for the proposition that there is an exception to the intra-corporate conspiracy doctrine for conduct constituting a criminal conspiracy in violation of the federal criminal code. 618 F.3d 1240 (11th Cir. 2010). But in *Grider*, the Eleventh Circuit specifically did not reach the issue of whether to acknowledge such exceptions, *id*. at 1263, and, in any case, Ghiles has not alleged conduct constituting a criminal conspiracy in violation of the federal criminal code.

5