# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

SEBASTIAN C. GHILES,

    Plaintiff,

    v.

CITY OF CHICAGO HEIGHTS and JESSICA GARNER,

    Defendants.

No. 12 CV 7634

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Plaintiff Sebastian Ghiles worked as a building inspector for the City of Chicago Heights. After receiving a suspension that he believed was unfair, Ghiles filed this lawsuit. Two years later, while this lawsuit was pending, Ghiles was fired. Ghiles then amended his complaint, adding claims stemming from his termination. Ghiles alleges both race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Illinois Human Rights Act, 775 ILCS § 5/1-101 *et seq*. Ghiles also alleges that the city tortiously interfered with his business expectancy by harassing tenants living in his rental properties. The city moves for summary judgment on all remaining counts.[1] For the following reasons, the city's motion is granted in part.

---

[1] In addition to the claims discussed in this opinion, Ghiles also alleged a first-amendment retaliation claim and conspiracy claims for false arrest and malicious prosecution under Illinois law and 42 U.S.C. §§ 1983 and 1985. Defendants moved to dismiss these claims, and those counts were dismissed without prejudice and with leave to replead. *See Ghiles v. City of Chicago Heights*, No. 12 CV 07634, 2016 WL 561897 (N.D. Ill. Feb. 12, 2016). Ghiles did not amend his complaint to replead those claims.

## I. Legal Standards

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, the court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *See Roh v. Starbucks Corp.*, 881 F.3d 969, 973 (7th Cir. 2018).

## II. Background

Plaintiff Sebastian Ghiles worked as a building inspector for the City of Chicago Heights from 1999 until his termination in 2014. [111] ¶¶ 1, 6, 15.[2] In November 2011, the city issued Ghiles a 3-day unpaid suspension. *Id.* ¶ 7. The parties dispute the motivation for this punishment. The city says the suspension was based on the results of an investigation that revealed Ghiles's repeated failure to obtain inspections and occupancy permits for rental properties he owned within the city, which the city found especially concerning given Ghiles's role as a city

---

[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to depositions, which use the deposition transcript's original page number. The facts are largely taken from plaintiff's response to defendant's LR 56.1 statement of facts, [111], and defendant's response to plaintiff's LR 56.1 statement of additional facts, [118], where the asserted fact and accompanying response are set forth in the same document.

2

inspector. *Id*. Ghiles denies that any investigation could have resulted in such a finding because he had the necessary permits at all times. *Id*. Stephanie Chaney, another city inspector, personally reviewed the files for Ghiles's rental properties and saw that Ghiles had the required permits. [111-1] ¶¶ 25–26. Though his suspension was supposed to be unpaid, Ghiles was paid for all three days. [111] ¶ 8. The city asserts that this was due to a payroll error, but Ghiles says it was because he had the necessary permits. *Id*.

During his employment, the city placed Ghiles under constant surveillance, reduced his job duties, refused to put his name on the contractor list as a drywall contractor, assigned him to do inspections in a high crime area, denied his requests for other inspection assignments, and refused to reimburse him for a training course he wanted to attend. *Id*. ¶ 27; [98-18] at 100:20–101:6.[3] Ghiles was also subjected to daily mistreatment and consistently berated and undermined by his supervisor throughout the duration of his employment. [118] ¶¶ 13–16.[4] The parties

---

[3] In his response, Ghiles alleged for the first time that he was the only employee assigned to alley duty, yelled at for bringing his personal computer to work, forced to ride with other people in his vehicle, and prevented from attending weekly meetings. These assertions are not identified in either party's LR 56.1 statements of facts. Although Ghiles may refer to evidence to controvert an assertion by the city, he may not rely on additional facts to support a denial of summary judgment because his failure to comply with the local rules did not give the city an opportunity to respond. Therefore I disregard these assertions. I consider the other adverse acts that Ghiles identified in his complaint and in his responses to interrogatories despite the city's objections. The city addressed these assertions in its own LR 56.1 statement, which shows that it had an opportunity to respond to them. Finally, Ghiles also asserted that the city took away his work vehicle, but the record is clear that Ghiles had a company vehicle throughout his employment. *See* [98-18] at 93:16–97:16.

[4] The city objects to these statements of fact, asserting that they lack foundation, are immaterial, argumentative, contradictory, and conclusory. I disagree. Ghiles relies on an affidavit from Chaney, who has the personal knowledge necessary to make these assertions.

3

dispute whether other employees were treated similarly. *See id.* Ghiles was the only black male employed by the City Inspector's office. *Id.* ¶ 17.

The circumstances surrounding Ghiles's termination began to unfold on December 3, 2013, when the Chicago Heights Police Department received a call for suspicious circumstances on a piece of property.[5] [111] ¶ 9. Detective Bill Henderson responded to the call. *Id.* ¶ 10. At this time, the owner of the property at issue, David Harland, had lived out of the state for about nine years. [118] ¶ 3. Harland had put metal fencing on the property in 2000, *id.* ¶ 2, though Ghiles claims that in 2013, when this incident occurred, there was no fencing on the lot. Ghiles had visited the property roughly two months prior in his role as a city inspector, to take photos and document the state of the property and the contents of the yard for the city's file. *Id.* ¶¶ 5–6. Ghiles had not seen any rolled up fencing while he was there. [111-11] at 102:14–18.

The parties dispute much of what happened after Henderson responded to the call. The city asserts that Henderson arrived on the scene and found three individuals, Dycen Beck, J.D. Agee, and Nathaniel Carroll, loading scrap metal from Harland's property into a truck, but this assertion is unsupported and controverted in the record. *See* [111] ¶ 11; [98-5] at 66:10–70:19; [111-4] at 157:20–158:10. Ghiles maintains that there was no scrap metal to be stolen and that none of these individuals were on the scene when Henderson arrived. *See* [111] ¶ 11;

---

That Ghiles did not identify these facts prior to asserting them in his LR 56.1 statement of additional facts does not prevent him from relying on them now.

[5] Ghiles disputes this fact saying the cited testimony is not supportive, but the deposition cited supports the city's assertion and so the fact is admitted. *See* LR 56.1(b)(3)(C).

4

[111-4] at 157:20–158:10; [111-11] at 102:14–18. Somehow, though, Agee, Beck, and Carroll, were taken into custody. *See* [111] ¶ 12; [98-6] at 5; [111-5] at 100:19–24, 103:2–4. Agee later testified that Ghiles had told him, Beck, and Carroll about a clean-up job that needed to be done at the property and that Ghiles had been present when the three men removed items from the property to take to nearby scrap yards. [98-5] at 66:10–67:21; 84:22–85:4. Ghiles disputes the truth of Agee's statements, asserting that the police forced Agee to implicate Ghiles and that Agee had apologized to Ghiles's fiancée for falsely implicating him to get out of jail. *See* [111] ¶ 11; [111-6] at 48:7–24.

After obtaining incriminating statements from Agee, Beck, and Carroll, the Cook County State's Attorney's Office approved felony charges, and Henderson signed criminal complaints against Ghiles for felony theft over $500 and official misconduct on December 10, 2013. [111] ¶¶ 12–13. Ghiles was arrested the same day. *Id*. ¶ 13. Later that month, the city placed Ghiles on paid administrative leave pending the outcome of the criminal investigation.[6] *Id*. ¶ 14. The charges against Ghiles were submitted to a grand jury, and on January 15, 2014, the grand jury indicted Ghiles for felony theft and official misconduct. *Id*. ¶ 16. On the day of his indictment, Ghiles received a letter notifying him that his employment with the city had been terminated. *Id*. ¶ 15. The felony charges proceeded to trial and after deliberating for nearly six hours the jury returned a verdict of not guilty on June 5, 2015. *Id*. ¶ 17.

---

[6] Ghiles disputes that the police actually conducted an investigation but provides no support for this contention. Because this fact was not properly disputed it is admitted.

While he was still employed by the city, Ghiles obtained a Firearms Owners Identification Card and in his spare time worked as a firearms instructor. *Id.* ¶¶ 18–19. In December 2013, Ghiles formed his own firearms-instructor company, Two Protection, LLC. *Id.* ¶ 20. As a result of the criminal proceedings brought against him, Ghiles's FOID card was revoked. *Id.* ¶ 22. Ghiles began the process to have it reinstated shortly after he was acquitted in June 2015, and he got it back nearly a year later, sometime in the spring of 2016. [98-18] at 1, 25:12–15, 27:1–13.

In addition to working for the city and as a firearms instructor, Ghiles owned rental properties in Chicago Heights. [111] ¶ 2. A tenant, Verer Kennedy, lived in one of Ghiles's properties from around 2011 through 2013 or 2014. [98-18] at 63:1–64:4. Of the rest of the tenants Ghiles identified, those who moved out of Ghiles's properties did so in 2012 or 2013.[7] [111] ¶ 29. One of his rental properties was the subject of a judicial sale in early 2014. *Id.* ¶ 32.

### III. Analysis

Ghiles alleges that the city violated Title VII and the Illinois Human Rights Act by discriminating against him because of his race and by retaliating against him for engaging in protected activity. Title VII and Illinois Human Rights Act claims are analyzed using the same standards. *See Zaderaka v. Ill. Human Rights Comm'n*, 131 Ill.2d 172, 178–79 (1989). Ghiles also alleges that the city, through its

---

[7] Two tenants who moved out in 2013 allegedly told Ghiles that they were moving out because of the city's harassment. *See* [98-18] 73:6–74:2, 77:6–15. These statements, however, are inadmissible hearsay.

6

employees, tortiously interfered with his business expectancy relating to his rental properties.

### A. Discrimination

Both Title VII and the Illinois Human Rights Act protect individuals from racial discrimination by their employers. 42 U.S.C. § 2000e-2(a); 775 ILCS § 5/1-102(A). A plaintiff alleging employment discrimination based on his race must present evidence that, as a whole, would allow a reasonable jury to conclude that the plaintiff's race caused the adverse employment action. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). "Not everything that makes an employee unhappy is an actionable adverse action." *Nichols v. S. Ill. Univ. Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007). To give rise to a claim, the action at issue must be "a materially adverse change in the terms and conditions of employment [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993). Typically, adverse actions are economic injuries, but they may also include actions that result in "a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id*.

Aside from his termination, none of the other adverse actions Ghiles identifies is significant enough to give rise to a discrimination claim. Had it been unpaid, Ghiles's three-day suspension could have constituted an adverse employment action. But a suspension that does not result in any economic effect is

7

not materially adverse. *See Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 647 (7th Cir. 2005). Ghiles's assertions regarding changes in his job duties are also insufficient. While a change in job duties that impacts the plaintiff's salary or opportunities for future advancement may constitute a materially adverse action, "purely subjective preference for one position over another" does not "justify trundling out the heavy artillery of federal antidiscrimination law." *Herrnreiter v. Chicago Hous. Auth.*, 315 F.3d 742, 745 (7th Cir. 2002). Ghiles fails to elaborate beyond his general assertion that he was subjected to changes in job duties. He does not identify what these changes were, nor does he show that these changes resulted in any material harm. As for the city's refusals of Ghiles's requests to conduct other types of inspections, Ghiles has not alleged any *change* at all. Nor has he properly alleged a failure to promote claim, which requires a plaintiff to show that the position for which he was rejected offered markedly greater compensation, responsibilities, or title. *Riley v. Elkhart Comm. Schools*, 829 F.3d 886, 892 (7th Cir. 2016).

Ghiles's unspecific allegations that he was yelled at, berated, and undermined by his supervisor on a daily basis also fail to constitute materially adverse actions. "General hostility and comments do not qualify as actionable adverse employment actions unless the hostility was severe and pervasive." *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004). Ghiles generally asserts that he was mistreated daily, but provides no evidence to allow a reasonable juror to conclude that this treatment was severe enough to constitute a materially adverse action. The rest of the actions Ghiles points to are similarly insufficient. His assertions that

8

he was subjected to constant surveillance and that he was not listed as a drywall contractor are not adverse changes in the conditions of his employment, *see Stockett*, 221 F.3d at 1001, nor do they rise beyond mere inconveniences. That Ghiles was not reimbursed for one training course he took is also too insignificant. And other than Ghiles's vague assertions that he was forced to conduct inspections in a high crime area, there is no evidence suggesting that this treatment was severe or pervasive enough to rise to a materially adverse employment act. Even considering these actions together, Ghiles fails to demonstrate that the change in the overall conditions of his employment rose to the level of a materially adverse action. *See Collins v. State of Ill.*, 830 F.2d 692, 704 (7th Cir. 1987) (holding that a transfer to a new department resulting in more menial job duties and a move from a private office to a receptionist's desk, along with the loss of a secretary, telephone, business cards, and a listing in professional publications *together* constituted a materially adverse action). Ghiles has not demonstrated a change in his work environment that rises to the level of being "humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative." *Herrnreiter*, 315 F.3d at 744. As a result, the only materially adverse action Ghiles suffered was his termination.

In addition to identifying a materially adverse action, to succeed on a claim for racial discrimination a plaintiff must show that the action constituted discrimination by demonstrating that it was motivated by the plaintiff's race. *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1105–1106 (7th Cir. 2012). The city argues that Ghiles was terminated because of the criminal proceedings

9

initiated against him. Ghiles argues that this justification is pretextual, that the city knew he had not committed any criminal acts, and that he was actually terminated because of his race. Though only Ghiles's dismissal constitutes a materially adverse action giving rise to a discrimination claim, evidence of non-material adverse actions may provide context that would allow a factfinder to conclude that the dismissal was racially motivated. However, Ghiles fails to link any of this behavior to his race. Criticizing or being aggressive towards an employee, without using racially charged epithets, while potentially unfair, does not demonstrate racial animus. *Id.* Similarly, none of the other acts identified appear to have anything to do with Ghiles's race. The only evidence Ghiles presents to link this behavior to his race is that he was the only black male employed as a city inspector. Without more tying this mistreatment to his race, no reasonable jury could determine that Ghiles's race caused his termination. *See Loving v. Lew*, 512 Fed. App'x 616, 619 (7th Cir. 2013) (unpublished and nonprecedential).

Assessing Ghiles's claim under the *McDonnell Douglas* burden shifting framework would not change the outcome. Ghiles fails to establish a prima facie case of discrimination, providing no evidence that he was meeting the city's legitimate expectations or of similarly situated employees who were treated more favorably (i.e. employees who had criminal charges pursued against them and were not terminated). *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012).

### B.     Retaliation

For his retaliation claim, Ghiles must offer evidence of "(1) a statutorily protected activity; (2) a materially adverse action taken by [his] employer; and (3) a causal connection between the two." *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017) (*quoting Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 404 (7th Cir. 2007)). The city does not dispute that Ghiles engaged in statutorily protected activity—the filing of this lawsuit. Ghiles originally filed this lawsuit in September 2012, alleging, among other things, that the city discriminated and retaliated against him through conduct occurring prior to his termination. After he was terminated, Ghiles filed an amended complaint, which I read as alleging that all of the mistreatment he suffered, including his termination, was in retaliation for his protected activity.

The standards for what constitutes a materially adverse action are different in the retaliation context. For retaliation, a plaintiff must show that the action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotations omitted). Insignificant alterations to an employee's duties not reflected by a corresponding change in hours, compensation, or career prospects would not dissuade a reasonable worker from making a charge of discrimination. *Stephens v. Erickson*, 569 F.3d 779, 791 (7th Cir. 2009) (holding that assigning menial tasks, stationing in dangerous neighborhoods, physically isolating from other employees, and intimidating through staring and yelling were not materially

11

adverse actions). Ghiles has not shown that any of the acts he identifies, aside from his termination, were significant enough to deter a reasonable person from reporting discrimination. Nor has he demonstrated that all of these actions together altered the conditions of his employment enough to constitute a materially adverse act.

As for Ghiles's termination, the city argues that there is no causal connection linking it to his protected activity. Given the two-year time gap between the two acts, temporal proximity alone does not establish a causal connection. *See Nicholson v. City of Peoria, Ill.*, 860 F.3d 520, 524 (7th Cir. 2017). Though not materially adverse, Ghiles argues that the other acts he identifies reveal a consistent pattern of retaliatory conduct sufficient to demonstrate a causal connection between his protected activity and his termination. But there is no evidence, temporal or otherwise, that the other actions Ghiles relies on were caused by his protected activity. Nothing suggests that the city treated Ghiles any differently after he filed this lawsuit. In fact, Ghiles asserts that he was mistreated consistently from 2010 to 2014. Ghiles has failed to demonstrate a causal connection and no reasonable jury could conclude that his termination was motivated by his protected activity.

### C. Tortious Interference with Business Expectancy

The elements of a tortious interference with business expectancy claim include: (1) a valid business expectancy by the plaintiff; (2) the defendant's knowledge of that expectancy; (3) the defendant's intentional and unjustified interference, which prevented the realization of that expectancy; and (4) damages.

*Mannion v. Stallings & Co.*, 204 Ill.App.3d 179, 188 (1st Dist. 1990). Ghiles alleges that the city, through its employees, tortiously interfered with his business expectancy in his rental properties by going to his properties and harassing the tenants, falsely suggesting that Ghiles did not have necessary permits and that the tenants were not allowed to occupy the properties.[8]

The statute of limitations for a civil action against a municipal corporation is one year. 745 ILCS 10/8-101(a). Ghiles concedes that each of the tenants who moved out of his properties, aside from Kennedy, did so during or prior to 2013. Ghiles brought his claim for tortious interference for the first time in his amended complaint, which was filed on August 21, 2015.[9] Insofar as his claim encompasses tenants who moved out during or prior to 2013, it is time barred. As for Kennedy, a reasonable juror could conclude that she moved out of Ghiles's property sometime after August 21, 2014. But because summary judgment is granted as to Ghiles's federal claims, I relinquish supplemental jurisdiction over what remains of his tortious interference claim. *See* 28 U.S.C. § 1367(c)(3); *Al's Service Center v. BP Prods. N. America, Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) ("When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims.").

---

[8] As discussed in note 3, assertions not made in a party's LR 56.1 statement and raised for the first time in response to a motion for summary judgment need not be considered. Ghiles fails to identify the harassing conduct that forms the basis of his tortious interference claim in his LR 56.1 statement of additional facts. But because the evidence in the record raises a genuine dispute over this fact, in this instance I overlook this technical noncompliance with the rule.

[9] Because his tortious interference claim does not arise out of the same conduct as that set out in his original complaint, there is no relation back. *See* Fed. R. Civ. P. 15(c)(1)(B).

Ghiles's tortious interference claim based on his contractual relationship with Kennedy is dismissed without prejudice; to the extent his claim is based on other tenants, the city's motion for summary judgment is granted.

### D. Section 1981

In his response, Ghiles asserts that although he did not specifically reference them in his complaint, he "also has claims in 42 U.S.C. § 1981, through the clear allegations of race discrimination he has made throughout his complaint." Aside from this statement, Ghiles does not articulate the basis for his § 1981 claims. The city argues that this is an improper request to amend the complaint. I disagree. Though a plaintiff cannot alter the factual basis of his complaint at summary judgment, he is not required to plead legal theories in his complaint. *Whitaker v. Milwaukee Cnty., Wis.*, 772 F.3d 802, 808 (7th Cir. 2014). In other words, while Ghiles was required to identify the factual basis for his potential claims in his complaint, he was not required to name the specific legal theories he would pursue. Assuming that Ghiles could articulate a § 1981 claim relying on the facts asserted in his complaint, nothing would have prohibited him from doing so. That said, Ghiles has failed to articulate his claim and the basis for such a claim remains unclear. Because § 1981 does not provide a remedy against public employers, *see Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989), Ghiles would not prevail on a § 1981 claim against the city. Instead, § 1983 provides the exclusive federal remedy for a violation of the rights guaranteed by § 1981 by state government units. *Id*. An employee may bring a § 1983 discrimination claim against his government

employer, and the same standards used in Title VII context govern the § 1983 claim. *Lauderdale v. Ill. Dept. of Human Servs.*, 876 F.3d 904, 910 (7th Cir. 2017). Because Ghiles has failed to prove his Title VII claim, any § 1983 claim would fail as well.

In sum, the city's motion for summary judgment is granted except as to Ghiles's tortious interference claim to the extent it is not time barred, which is dismissed without prejudice.

## IV. Conclusion

Defendant's motion for summary judgment [99] is granted in part. Enter judgment and terminate civil case.

ENTER:

                                                                                 Manish S. Shah
                                                                                  United States District Judge

Date: March 19, 2018